OSCAR TEUBNER ET AL. *v.* CITY OF WATERBURY

JAMES GRIFFIN ET AL. *v.* CITY OF WATERBURY

Argued April 4—decided May 29, 1962

*William J. Secor, Jr.,* with whom was *Kenyon W. Greene,* for the appellants (plaintiffs).

*John D. Mahaney,* assistant corporation counsel, with whom were *Harry F. Spellman,* corporation counsel, and, on the brief, *Francis J. Butler,* for the appellee (defendant).

MURPHY, J. The plaintiffs in these two cases are ten members of the fire department in the city of Waterbury who claim that they are entitled to additional compensation for overtime work performed since the adoption, in 1958, of a so-called forty-two-hour work-week program for the department. The six plaintiffs in the Griffin case also seek additional compensation which they claim by reason of their promotion to higher ranking positions in the department. The trial court rendered judgments for the defendant, and the plaintiffs have appealed.

Originally, the four plaintiffs in the Teubner case also sought additional compensation claimed to be due them on their promotion to higher office. Counsel for the city, in argument before us, admitted the paragraphs in the Teubner complaint which

alleged that these four plaintiffs had been legally promoted. The answer denied these allegations. So far as the record indicates, it would appear that the admission of the legality of the promotions of these plaintiffs was made for the first time in this court on the appeal. Neither the finding nor the memorandum of decision mentions any admission or stipulation made in the trial court. The court in its finding concluded that the promotions of these plaintiffs were made in accordance with the provisions of the Waterbury charter. These plaintiffs assigned error in that conclusion on the ground that the facts in the finding did not support it. That is so. There is no reference in the subordinate facts to these plaintiffs or the circumstances of their promotion. This rather anomalous situation, coupled with the fact that the record does not disclose any pleading to several paragraphs in each of the ten counts of the two complaints, prompted an excursion into the transcript. It disclosed that all of the first seven paragraphs in each count, with the exception of the statement that each of the plaintiffs was a member of the fire department, had been expunged. The transcript showed also that after two of the plaintiffs had testified, the defendant admitted that the plaintiffs in the Teubner case had been legally promoted but denied that the promotions of the plaintiffs in the Griffin case were legal. The issues became relatively simple, although one would not get that impression from the pleadings and the record as they were presented to us. A substituted complaint, omitting the expunged material, would have simplified the trial court's problem and forestalled the inclusion in the printed record of what was expunged. Proper reference in the record to the admission of allegations in the pleadings,

theretofore controverted, would have been helpful to us in eliminating the obfuscation that envelops this litigation.

In November, 1949, the voters in Waterbury by referendum adopted an average fifty-six-hour work week for permanent paid firemen under the provisions of Public Act No. 212 of the 1949 General Assembly. Cum. Sup. 1955, §§ 426d–430d (as amended, General Statutes §§ 7-303—7-306). On November 10, 1958, the board of fire commissioners and the board of aldermen adopted a resolution providing an average work week of not more than forty-two hours on a fiscal year basis commencing January 1, 1959, to be accomplished over a three-year period. The first year the work week was to be fifty-one and one-third hours; the second year, forty-six and two-thirds hours; and the third year, forty-two hours. Overtime pay at specified rates was to be paid for all work in excess of the average work week. Each of the plaintiffs worked fifty-six hours per week from January 1, 1959, to March 8, 1960, when suit was instituted. They have not been paid for the overtime.

The relevant portions of Public Act No. 212 are now §§ 7-303 to 7-306 of the General Statutes. Such modifications of the act as were made by the 1957 General Assembly are not material to the issue herein. Public Acts 1957, No. 13, § 49. Section 7-304 provides two ways in which a municipality can establish an average work week of fifty-six hours for its firemen. It can do so by ordinance or by majority vote in a referendum upon petition of at least 5 percent of the electorate. Waterbury used the latter procedure. The result of the vote was officially determined by the board of aldermen on November 14, 1949, and the provisions of the act be-

came effective after the interim period provided therein. There is nothing in the general statutes or the Waterbury charter which gives the board of fire commissioners or the board of aldermen the authority to adopt an average work week of less than fifty-six hours for firemen. In the absence of constitutional restrictions, the legislature may enact laws relative to the hours of service of firemen without infringing on a municipality's right of home rule or local self-government. 62 C.J.S. 1235, § 600.

The plaintiffs advance a construction of § 7-305[1] which they claim permits a municipality to adopt an average work week of less than fifty-six hours. We do not agree. Section 7-305 must be interpreted in conjunction with § 7-304, which specifically states that a municipality may adopt an average work week of fifty-six hours for firemen. It does not permit adoption of an average work week of fewer hours than that. Section 7-305 does no more than provide for the manner in which the average work week is to be computed. It is to be computed over a period of one year and shall not exceed fifty-six hours. We are dealing here with an average work week, not with a minimum or a maximum work week. To determine the average work week for any year, it is necessary to divide the total number of hours worked by fifty-two. See *Emerick* v. *Monaco & Sons Motor Sales, Inc.,* 145 Conn. 101, 103, 139 A.2d 156; *Mazzi* v. *Smedley Co.,* 95 Conn. 607, 610, 112 A. 168; *Rice's Case,* 229 Mass. 325, 328, 118 N.E. 674; *Braggs Quarry* v. *Smith,* 161 Tenn. 682, 688, 33

---

[1] "Sec. 7-305. WORK WEEK. The work week for all permanent paid members of the uniformed fire fighter force for municipalities adopting sections 7-303 to . . . [7-306], inclusive, shall be an average work week of not more than fifty-six hours, computed over a period of one fiscal or calendar year, as the municipality elects . . . ."

S.W.2d 87, 34 S.W.2d 714; *State Road Commission* v. *Industrial Commission,* 56 Utah 252, 266, 190 P. 544. Sections 7-303 to 7-306 place a ceiling on the average number of hours per week a fireman can be compelled to work in those municipalities which elect to operate under the provisions of those sections. They do not permit, nor does any special act permit, Waterbury to adopt by resolution an average work week for firemen of less duration than fifty-six hours. *Old Colony Gardens, Inc.* v. *Stamford,* 147 Conn. 60, 62, 156 A.2d 515. The conclusion of the court that the plaintiffs are not entitled to overtime pay is correct, although it is predicated upon the wrong ground. *Emerick* v. *Monaco & Sons Motor Sales, Inc.,* supra, 106.

Another issue in the Griffin case concerns the validity of the promotions of the plaintiffs in that case. On November 27, 1959, Griffin and his coplaintiffs were promoted by the board of fire commissioners to higher ranking positions in the department, effective December 1, 1959. At that time, there were no vacancies in the positions to which they were promoted, so the action of the fire board in effect rested on the establishment of new positions. Section 3352 of the Waterbury charter (1957) provides: "The fire department shall consist of a chief engineer, three deputy chief engineers, a superintendent of the fire alarm telegraph and a fire marshal. . . . The department shall consist of such other officers and privates, designated as firemen, which the board of fire commissioners may deem necessary and the board of aldermen shall approve." 26 Spec. Laws 293, No. 448. Section 3353 of the charter empowers the board of fire commissioners to make all necessary rules and regulations for the government of the department

and to "appoint and prescribe the duties of all officers, members and employees of . . . [the] department, except where any powers and duties may be prescribed by the board of aldermen, and shall fix their compensation, subject to the approval of the board of aldermen." 21 Spec. Laws 626, § 224. The plain import of these provisions is that positions of officers in the department, other than those specified in the charter, can be created only by the board of aldermen, acting on the recommendation of the fire board. 62 C.J.S. 1241, § 603. Once positions have been created, the responsibility for selecting the personnel to fill them and to make the appointments rests with the fire board.

There is no claim here that the board of aldermen took specific action to create the positions to which the fire board attempted to promote the plaintiffs in the Griffin case. On December 18, 1959, however, the board of aldermen approved the budget which had been submitted to it by the board of finance and which contained appropriations for the fire department for the year starting January 1, 1960. The budget included an allowance for salaries for the additional officer positions to which the plaintiffs in the Griffin case were ostensibly promoted. They claim, therefore, that the approval of the budget by the board of aldermen amounts to an approval of the creation and establishment of those positions. We see no merit in this contention. The board of finance could not create the positions. Its duty was to estimate the expenses, liabilities and resources of the city for the fiscal year and to recommend a tax rate. Waterbury Charter § 1336 (1957); 24 Spec. Laws 765, § 4. The board of finance had to submit its budget to the aldermen during the fourth week of November. Ibid. In this instance, it sub-

mitted the budget on November 28, 1959, the day after the fire board attempted to promote these plaintiffs. We may assume that the board of finance knew of the fire board's action and for that reason included the additional salaries in the budget. But the action of these two boards and the approval of the budget by the board of aldermen did not suffice to create the positions. That required specific action by the board of aldermen. The invalidity of the promotions must have become apparent on January 18, 1960, when the compensation of these plaintiffs reverted to that for the positions which they had occupied prior to December 1, 1959.

In the view which we take of these cases, it is unnecessary to consider the other claims of the plaintiffs or the myriad of special defenses interposed by the city. They have served only to becloud the issues.

There is no error in either case.

In this opinion the other judges concurred.